**A. A. McNAUGHT, Plaintiff and Appellant,**

v.

**Mabel McNaught MacARTHUR and Elsie McNaught MacArthur, Defendants and Appellees.**

**Civil No. 8902.**

Supreme Court of North Dakota.

July 16, 1973.

Duffy & Haugland, Devils Lake, for the plaintiff and appellant.

Foughty, Christianson & Thompson, Devils Lake, for the defendants and appellees.

TEIGEN, Judge.

The plaintiff, A. A. McNaught (hereinafter Sandy), has appealed from a judgment dismissing his complaint by which he seeks to cancel and set aside as null and void a deed by which he conveyed an undivided one-third interest in a quarter section of land to each of his two sisters, who are the defendants, Mabel McNaught MacArthur (hereinafter Mabel) and Elsie McNaught MacArthur (hereinafter Elsie). The action is premised on the ground that the deed was obtained by the exercise of undue influence and fraud, and was without consideration. The action was tried to the court without a jury.

The trial court filed a comprehensive memorandum opinion in lieu of findings of fact and conclusions of law, as permitted by Rule 52(a), N.D.R.Civ.P. The trial court analyzed the facts presented and found that Sandy had failed to sustain the burden of proof, and held that the deed in question constitutes a valid and sufficient conveyance of an undivided one-third interest in the quarter section to Mabel and an undivided one-third interest in the quarter section to Elsie.

The specifications of error, the issues and arguments set forth in the briefs, and the oral arguments all relate to the claim of insufficiency of the evidence to sustain the judgment. No claim is made that the trial court applied the wrong law to the issues as framed by the complaint and the evidence produced.

We are cognizant of the advantages of the trial court in considering the live testimony as compared with the cold record submitted to us for review on appeal. The legislature of this state, also recognizing this problem, repealed Section 28–27–32, N.D.C.C., in 1971 (Ch. 311, S.L.1971). This section provided for trials de novo on the record in appeals from judgments in actions tried to the court without a jury. As a result we no longer have trial de novo in the supreme court on appeal from a judgment in an action tried to the court without a jury. In harmony with this change this court, by amendment to the North Dakota Rules of Civil Procedure, effective August 1, 1971, amended Rule 52(a), to provide:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The judgment in this action, from which the appeal was taken, was entered on November 3, 1972, and our review of the findings of fact is governed by that portion of Rule 52(a), N.D.R.Civ.P., quoted above.

A brief review of the undisputed facts indicates that the father of the parties owned five quarter sections of land. He died testate in 1955. By final decree of distribution two quarter sections were decreed to Sandy and one quarter section each was decreed to Mabel, Elsie and Russell McNaught, a brother, subject, however, to a life estate in the mother. The mother made substantial cash advances to her son, Russell. As a result, a family meeting was held in 1966 and, at that time, Russell signed some papers purporting to convey the quarter section decreed to him to Sandy, Mabel and Elsie. This is the same quarter section which is involved in this action.

The mother died testate on April 25, 1971. Her will has been admitted to probate. It purports to devise three quarter sections of land to Sandy, one quarter section each to Mabel and Elsie, and none to Russell. The will describes the same land as that described in the father's will. Subsequent to the death of the mother, a search of the records contained in the office of the register of deeds revealed that the father and mother owned the five quarter sections in joint tenancy with the right of survivorship and not as tenants in common. Thus it was determined that the probate of the father's estate was abortive and that the mother, upon the death of the

father, became the sole owner of the land and, upon her death, it became the property of her estate.

The instrument executed by Russell purporting to assign or quitclaim his interest in the land supposedly inherited from his father was not recorded and has not been found. Russell, however, makes no claim here to any distributive share of his mother's estate. The mother's will specifically provides that Russell shall receive no part of her estate because "I have heretofore given him his fair share of my inheritance."

The terms of the mother's will apparently were not known until the will was read following her death, and it was not until then that these parties learned that Sandy had been devised three quarter sections of land and the remaining two quarter sections had been devised, one each, to Mabel and Elsie.

The division under the mother's will was not satisfactory to Mabel and Elsie because it was not in harmony with the family plan agreed to in 1966. Following the death of the mother, her will was read in the office of the attorney selected to handle the probate of her estate. Present at the reading, in addition to the attorney, were Mabel and Sandy. Several days subsequent to the reading of the will, Sandy signed the deed in question, which signing took place in the attorney's office at about 6:00 or 6:30 p. m., with Mabel and the attorney's secretary present. The secretary acted as the notary public. The evidence is in conflict as to what was said and what occurred on these two occasions.

It is the contention of Sandy that he was not told that he was signing a deed, the light was dim, he did not read the instrument, he did not know it was a deed, he thought he was signing papers which would assist in speeding the process of probate, he had no intention and made no promise to convey any portion of his interest in the quarter section to his sisters, and he received no consideration for the conveyance. He also claims that he was not

well physically, had only an eighth grade education, and that Mabel exercised undue influence over him.

On the other hand, Mabel testified that at the time the will was read and when it was discovered that Sandy had been devised three quarter sections of land instead of two quarter sections as provided in the father's will, a discussion was held in the presence of the attorney, at which time Sandy voluntarily agreed to convey a two-thirds' interest in the quarter section in question, one-third each to Mabel and Elsie, and, a few days later, pursuant to such agreement, he signed the deed in the office of the attorney.

The attorney testified that there was a discussion in his office pertaining to the division as set forth in the mother's will at the time it was read, which discussion resulted in an agreement by Sandy to convey a two-thirds' interest in the quarter section to his sisters in order to reconstitute the division provided by the father's will, as modified by the family agreement. He also testified that he agreed to draw the necessary deed for Sandy's execution at a later date.

The attorney's secretary testified pertaining to the transaction that occurred in the attorney's office in her presence on the evening the deed was signed by Sandy. Her testimony indicates that she had typed the deed on instructions from her attorney-employer and that she explained to Sandy before he signed it that the instrument was a deed from himself to himself and his two sisters; that he looked at it and stated he "thought it was okay", and then he signed it in her presence, whereupon she notarized his signature.

The evidence in respect to the transaction in question is in direct conflict. The trial court has made its findings of fact and there is substantial evidence to support these findings. The findings support the conclusion of law that Sandy, who had the burden of proof, has failed to sustain that

burden and, therefore, the trial court properly dismissed his action.

In view of the record in this case we cannot say that the trial court's findings were clearly erroneous and we therefore affirm the judgment.

KNUDSON, Acting C. J., PAULSON, J., and EMIL A. GIESE, District Judge, concur.

The Honorable RALPH J. ERICKSTAD deeming himself disqualified did not participate; the Honorable EMIL A. GIESE, Judge of the Sixth Judicial District sitting in his place.

VOGEL, J., not being a member of the Court at the time of submission of this case, did not participate.